**Jackie SIEGMUND et vir, Appellants,**

**v.**

**George H. BEARD, Appellee.**

**No. 11948.**

Court of Civil Appeals of Texas, Austin.

July 12, 1972.

Rehearing Denied Aug. 2, 1972.

John B. Henderson, Jr., Cameron, for appellants.

John A. Black, Jr., Bellaire, for appellee.

PHILLIPS, Chief Justice.

Appellee brought suit against Appellants to recover title to 173.5 acres of land that he had previously conveyed to Appellants. He also sued for an accounting for the profits resulting from Appellants' use and occupancy of the land as for the reasonable rental value thereof. In response to a jury verdict, judgment was rendered for Appellee.

We affirm.

Appellee gave Appellants a real estate listing on the land in question in April, 1964. Appellee agreed to pay a 10% commission to Appellants for their services as real estate agents. Several months later, Appellants secured a contract of sale with one Bill Hailey in the amount of $26,000. Appellee agreed to pay Appellants 10% of the purchase price as a commission at the time of closing. The purchaser deposited $500 with Appellants as earnest money.

A title insurance policy was sought from the Milam County Abstract Company and the attorney who examined the title for the Abstract Company discovered a defect in one of the two tracts of land that comprised the total acreage covered by the contract of sale. According to this contract, Appellee had thirty days from the time of the notification of this title defect to cure it. Appellants assisted Appellee in an attempt to cure the defect. The parties were unable to cure the defect (which was attributable to an outstanding one-fifth interest in one of the two tracts involved). Appellant Al Siegmund returned the earnest money to the prospective purchaser and the contract of sale was terminated.

It is undisputed that the attorney for the proposed purchaser threatened to sue for the land and that such threat was communicated to the Appellee.

After the above-mentioned contract fell through, Appellant Al Siegmund made further efforts to sell the property for Appellee and, on one occasion, even prepared a contract of sale for another prospect, however the transaction never materialized.

According to Appellee's testimony, Appellants informed Appellee that he was about to lose his land to Bill Hailey, the party with whom Appellee had entered into the contract first mentioned above. Appellee further testified that Appellants recommended that he should convey the land to them and that they would continue to attempt to clear the title, sell the land, pay themselves their commission and any other expenses of sale and remit the remainder of the proceeds from the sale to Appellee.

Accordingly, two contracts of sale were drawn up covering the two tracts of land and were recorded. Two days later two deeds were drawn and executed reflecting Appellee as seller and Mrs. Jackie Siegmund as purchaser. The total consideration for the two tracts of land was $2,600 or the same amount as the 10% commission attributable to a sale for $26,000. It is not clear from the record why Appellee owed a commission on a sale that was never consummated, however, in April of 1964, Appellee had signed an instrument acknowledging that he owed Appellants a commission of $2,600 and in this same instrument gave Appellants an exclusive right to sell the property.

Since nothing had been done by Appellants to sell the property by March, 1968, Appellee consulted an attorney after which it was decided that a demand should be made for a return of the property. The attorney sent Appellants a letter demanding return of the property. Shortly thereafter Appellee filed this suit.

Pursuant to trial, the jury found that Appellee had conveyed the property in question to Jackie Siegmund in accordance with an agreement by the Siegmunds to clear the title defect, to sell the property and pay the proceeds of the sale to Appellee less the commission and taxes paid. The jury also found that prior to the execution of the contracts of sale from Appellee to Mrs. Siegmund a confidential relationship existed between Appellee and the Siegmunds, apart from the agreement made the basis of this suit. The jury also found that Mrs. Siegmund was not entitled to be reimbursed for any amounts of money expended by her in making reasonable improvements to the property.

Appellants are before us on nine points of error. The first four points relate to whether or not there was a fiduciary relationship or a relationship of special trust and confidence between the parties such as might support the theory of a constructive trust having been imposed upon the land in question. Inasmuch as we need not reach this theory to decide the case, we will not discuss these points further.

■ Under their points five and six, which we overrule, Appellants complain of the finding of the jury that Appellee conveyed the property in question to Jackie Siegmund pursuant to an agreement by the Siegmunds to clear up the title defect, sell the property and pay the proceeds of sale to Appellee less commission and taxes paid by Appellants, is without support in the evidence and contrary to the overwhelming weight and preponderance of the evidence.

We cannot agree with this contention and hold that in addition to there being sufficient evidence before the jury to uphold the contract theory, that the evidence is overwhelming in favor of such theory.

Appellee is a bus driver of very limited education. It also appears that in addition to having become involved with several lady friends, he had creditors pressing him for payment of certain debts that he had incurred. Thus the jury could well have believed that it was entirely illogical for Appellee to sell property valued, at least, at $26,000 for $2,600 (the exact amount of the commission allegedly owed) leaving nothing over and above to satisfy these debts. A much more logical theory, apparently believed by the jury, was that Appellee conveyed the property to the Siegmunds under the agreement he claims to have made. His intention could well have been to "buy time" with his creditors. This theory also comports with the testimony that he had told several persons he had sold the land to Jackie Siegmund. Testimony of the Siegmunds that they had spent money on the property in belief that the land belonged to them, while evidence in behalf of their position, would certainly not be controlling. Additional evidence that the land, in equity, belonged to Appellee was that the Siegmunds mailed Appellee certain delay rentals from the land retaining only the postage necessary for the mailing.

■ Appellee's petition (in addition to pleading a confidential relationship and a relationship of trust between the parties) pleaded the breach of the contract and asks that the land be returned. The statute of frauds was not pleaded by Appellants and was never raised in the trial of this case, consequently cannot be asserted against the contract here. Tex.R.Civ.P. 94, First Nat'l Bank in Dallas v. Zimmerman, 442 S.W.2d 674 (Tex.1969). Rescission of this contract and the return of the land were warranted when the Appellants put themselves

in a position where they had either abandoned the contract, were unable to perform or refused to perform the contract. See 13 Tex.Jur.2d Contracts, Right to Rescind for Breach of Contract, sec. 333 and cases there cited.

■ We also overrule points seven, eight and nine which object to the finding of the jury that Mrs. Siegmund expended no funds in making reasonable improvements to the property after Mrs. Siegmund had taken possession of it. Appellants argue that this finding is without support in the evidence, contrary to the overwhelming weight and preponderance of the evidence and so unreasonable that it is clearly the result of passion, prejudice or some other improper factor.

Of the many expenditures testified to by Mrs. Siegmund, many of which she asserted were paid for by check, not one was proved by checks introduced into evidence. All of the testimony as to the work done by others on the house and premises in question was introduced by the oral testimony of Mrs. Siegmund. Evidently the jury chose not to believe her.

With respect to the taxes and attorney's fees for which Appellants seek reimbursement, there is no proof of the amounts paid and no issue thereon was submitted to the jury.

■ The question of reimbursement for the $2,600 commission described earlier in this opinion was not raised by any of the pleadings nor by any motions after judgment and is not properly before this Court on appeal.

The judgment of the trial court is affirmed.

Affirmed.